## APPEAL OF THE BOSTON AMERICAN LEAGUE BASEBALL CLUB.

Docket No. 2324.  Submitted April 27, 1925.  Decided November 24, 1925.

In 1919 the taxpayer assigned two contracts which it had with two ball players to render services over a three-year period ending with 1921, and received the entire amount of the consideration in 1919. *Held*, that the entire amount of the consideration received by the taxpayer in 1919 constituted taxable income of the taxpayer for that year.

*Jacob I. Goodstein* and *George D. Strachan, Esqs.*, for the taxpayer.

*Ellis W. Manning, Esq.*, for the Commissioner.

### Before JAMES, SMITH, and TRUSSELL.

This appeal is from the determination of a deficiency in income and profits tax for the year 1919 in the amount of $27,575.09. The

point in issue is whether the taxpayer received income in 1919 to the full amount of the consideration agreed to be paid to it for the assignment of certain contracts which it had with two ball players.

### FINDINGS OF FACT.

On January 30, 1919, and March 21, 1919, the taxpayer entered into contracts with Carl W. Mays and George H. Ruth, under which these individuals agreed to render services as ball players for the taxpayer for the seasons 1919, 1920, and 1921, which contracts provided in part as follows:

9. Whenever, in the sole judgment of the club owner, it is to the advantage of the club that such action be taken, the club owner may transfer the player to another base ball club and assign the rights and obligations of the club owner hereunder to the owners of such other base ball club save as to the player's compensation, which in the event of assignment to another club of the American League of Professional Base Ball Clubs, or of the National League of Professional Base Ball Clubs, shall be the same as herein fixed; in the event said assignment is made to a club of any other league, the compensation shall be the same as that ordinarily paid in such other league to players of equal ability; and the parties hereto agree that in the event of disagreement between the player and the owner of such other club as to the compensation, the same shall be fixed by The National Base Ball Commission, and the decision of said Commission, or a majority of them, shall be final.

On July 29, 1919, the taxpayer entered into an agreement with the American League Baseball Club of New York, Inc., whereby it agreed to release Mays to the New York Club and assign its rights under its contract with Mays for a consideration of $40,000 and the release to the taxpayer of the services of Allen Russell and and Robert E. McGraw of the New York Club. Payment of the $40,000 was to be made, $25,000 upon execution of the agreement and $15,000 on August 15, 1919. The player was to report immediately to the New York Club "in good physical condition." The contract was fully performed.

On December 26, 1919, the taxpayer also entered into an agreement with the American League Baseball Club of New York, Inc., whereby it released to that club the services of player George H. Ruth, under the following conditions:

By herewith assigning to the party of the second part the contract of said Player George H. Ruth for the seasons of 1919, 1920 and 1921, in consideration of the sum of One Thousand ($1000) Dollars and other good and valuable consideration paid by the party of the second part, receipt whereof is hereby acknowledged.

Under a separate contract of even date it was agreed in part as follows:

It is agreed as follows:

First. The purchase price of the services of the said Player Ruth and of the assignment to the party of the first part of his contract with the party

of the second part is the sum of One Hundred Thousand ($100,000.) Dollars, which the party of the first part agrees to pay to the party of the second part, and the party of the second part agrees to accept as follows:

Twenty-five Thousand ($25,000.) Dollars in cash on the execution and delivery of this agreement, receipt whereof is hereby acknowledged.

Twenty-five Thousand ($25,000.) Dollars by the party of the first part making and delivering its promissory note, for that amount, payable to the order of the party of the second part, on the first day of November, 1920, with interest at the rate of six per centum (6%) per annum.

Twenty-five Thousand ($25,000.) Dollars by the party of the first part making and delivering its promissory note for that amount, payable to the order of the party of the second part, on the first day of November, 1921, with interest at the rate of six per centum (6%) per annum.

Twenty-five Thousand ($25,000.) Dollars by the party of the first part making and delivering its promissory note for that amount, payable to the order of the party of the second part, on the first day of November, 1922, with interest at the rate of six per centum (6%) per annum.

Each of the said promissory notes shall be endorsed by Jacob Ruppert and Tillinghast L. Huston, and the party of the first part shall have the privilege of taking up either or all of the said promissory notes at any time before the due date thereof by paying to the party of the second part, or the holder thereof, the amount secured thereby with the interest accrued thereon at the date of such payment. The said notes shall be made and delivered by the party of the first part to the party of the second part on the execution and delivery of this agreement.

Second. It is understood and agreed that in the event that the said Player George H. Ruth shall not report to the party of the first part on or before the first day of July, 1920, this contract and the said assignment may, at the option of the party of the first part, be cancelled, and in the event of such cancellation the party of the second part shall forthwith repay to the party of the first part the sum of Twenty-five Thousand ($25,000.) Dollars, paid on account of this contract, all sums paid on account of any of the said promissory notes and forthwith redeliver to the party of the first part the promissory notes above mentioned which shall then be unpaid, or, in default or the redelivery of the said promissory notes, or any of them, the party of the second part shall forthwith pay to the party of the first part the sums secured thereby with the interest accrued thereon to the date of such payment.

It was further agreed that, in the event that Ruth should demand an increase in salary for the years 1920 and 1921 beyond a stipulated amount, the taxpayer would pay the New York Club "on or before the first day of August, in each of the years 1920 and 1921, the amount of such excess up to the sum of Twenty-five Hundred ($2,500) for each of the years 1920 and 1921." It was further provided that if he did not demand any increase in salary but should claim to be entitled to some compensation or bonus for executing his consent to the assignment of his contract with the taxpayer, the New York Club would pay Ruth a certain amount to satisfy the claim and, if the amount was in excess of $10,000, the taxpayer would repay to the New York Club on account of such excess up to the sum of $5,000, this amount being payable in two equal payments

of $2,500 each on the first day of July, 1920, and the first day of July, 1921.

The transactions between the clubs were governed by the rules of the National Base Ball Commission, Rule 28 of which reads as follows:

In the event of the death or permanent incapacity of a purchased player while in the service of the releasing club, or prior to his reporting to the club acquiring title to him in the training or championship season, or of his failure to report to and contract with the purchasing club at a salary conforming to its classification, the agreement covering his release shall be null and void, and the party of the first part thereto shall forthwith return to the party of the second part all or any of the consideration received for his release, whether it be in money or the release of one or more players, and the purchasing club shall be relieved from all obligations for payments that have not matured.

On December 26, 1919, the taxpayer received $25,000 cash upon the execution of the agreement with the New York Club. On the same date it received promissory notes for the payment of the balance of the consideration, such notes being endorsed and bearing interest at the rate of 6 per cent per annum, as provided in the agreement above referred to. These notes were worth their face value. Ruth reported to the New York Club in 1920 prior to July 1.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The facts in this appeal are fully set forth in the findings of fact. Counsel for the taxpayer contends that the profit derived from the transactions resulting in the sale of players Carl W. Mays and George H. Ruth should be spread over the number of years the players were required to play under their contracts with the Boston Club. In making this argument, special attention was called to Rule 28 of the National Base Ball Commission, quoted above. It was argued that the profit was earned in the same proportion that the players rendered services under the contracts assigned to the New York Club, and that, even though the players reported as provided in the releases but failed to play for the full period prescribed in their contracts with the taxpayer, the taxpayer would be required to return a proportionate part of the money received under the releases to New York.

There appears to be no basis for such contentions in the provisions of Rule 28 of the National Base Ball Commission or in the contracts of release and assignment. Rule 28 merely provides for the return of the consideration if the player fails to report in good

physical condition to the club to which he is released or fails to contract with said club. It has nothing to do with the failure to play under such contracts after he has reported.

There is no question in our minds as to when the profit was derived by the taxpayer from the release of player Mays. The contract of release was signed July 29, 1919. His contract to play with the taxpayer during the seasons 1919, 1920, and 1921, was assigned on the same date. The player involved in the transaction reported immediately and on August 15, 1919, the New York Club paid to the taxpayer the balance due under the contract. The transaction was initiated and concluded within the year 1919, and the income derived therefrom was income of that year.

The release and assignment of the contract which the taxpayer had with player Ruth and the supplemental contract between the taxpayer and the New York Club were executed on December 26, 1919. On the same day the New York Club paid to the taxpayer $25,000 cash and gave it three promissory notes for the balance of the consideration, such notes being endorsed and bearing interest at the rate of 6 per cent per annum, as provided in the contract of sale. One of the provisions of this agreement reads:

Second: It is understood and agreed that in the event that the said Player George H. Ruth shall not report to the party of the first part on or before the first day of July, 1920, this contract and the said assignment *may*, at the option of the party of the first part, *be cancelled.* * * * (Italics ours.)

At the hearing of this appeal it was argued on behalf of the taxpayer that, in the event that Ruth did not report to the New York Club on or before July 1, 1920, the contract of sale with the New York Club was null and void under Rule 28 of the National Base Ball Commission (quoted in the findings), and that, in such event, it would be obligated to repay to that club all of the consideration it had received from it under the contract of sale. We do not think that this is so. The New York Club reserved to itself the right to determine whether it would consider the contract of sale void in case Ruth did not report to it at the time contemplated by both parties. If he did not report, the New York Club might have elected to have him report to some other club to which it might sell his services.

The contract of sale entered into on December 26, 1919, was a valid contract until it was canceled. The consideration for the contract ($100,000) was received by the taxpayer in 1919 in the form of cash and promissory notes. There is nothing in the evidence to indicate that the notes were worth less than their face value, and, in the absence of such evidence, we conclude that they were. The facts are, therefore, that the taxpayer received income to the extent of $100,000 in 1919 from the sale of Ruth under a contingency that this

amount might have to be returned in the event that Ruth did not report to the New York Club. We do not think that this contingency affects the income character of the receipt of the $100,000 consideration in 1919.

In the argument of this appeal counsel for the taxpayer claimed that the total amount of consideration received by the taxpayer upon the sale of the services of Ruth was only $95,000; that under its agreement the taxpayer was obligated to and did pay to the New York Club $5,000, as provided for in the contract of December 26, 1919. No evidence of such payment was submitted, however, and it must be held that the taxpayer realized taxable income of $100,000 upon the sale, as determined by the Commissioner.